IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JASON MAZUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-018 |
| | ) | |
| DWAYNE BLAIR, Warden of Care and | ) | |
| Treatment; RALPH KEMP, Warden of | ) | |
| Wheeler Correctional Facility; ROBERT | ) | |
| ROSIER, Warden of Security; MR. | ) | |
| HARMOND, Property Control Officer; | ) | |
| CHARLOTTE ALDRICH, Mailroom | ) | |
| Supervisor; SARAH FAULK, Mailroom | ) | |
| Assistant; WHEELER CORRECTIONS | ) | |
| FACILITY; CORRECTIONAL | ) | |
| CORPORATION OF AMERICA; | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| CORRECTIONS; and JAMES DONALD, | ) | |
| Commissioner of the Georgia Department | ) | |
| of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Wheeler Correctional Facility in Alamo, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must

be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

## I. SCREENING THE COMPLAINT

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Dwayne Blair, Warden of Care and Treatment; (2) Ralph Kemp, Warden of Wheeler Correctional Facility ("WCF"); (3) Robert Rosier, Warden of Security; (4) Mr. Harmond, Property Control Officer; (5) Charlotte Aldrich, Mailroom Supervisor; (6) Sarah Faulk, Mailroom Assistant; (7) Wheeler Correctional Facility; (8) Corrections Corporation of America; (9) Georgia Department of Corrections; and (10) James Donald, Commissioner of the Georgia Department Of Corrections. (Doc. no. 1, pp. 1, 4). Plaintiff contends that these Defendants violated his constitutional rights because they denied Plaintiff access to magazines that he ordered from a publishing company and retaliated against him when he filed grievances regarding the magazines. (Id. at 5, 7).

According to Plaintiff, on September 6, 2007 he received a notice from the mailroom staff at WCF that there were nine back issues of a magazine to which he has subscribed, waiting to be picked up; however, he was not allowed to receive the magazines because there was no record on file to show that he had paid for them from his inmate account.[1] (Id. at 5). Plaintiff states that in the process of informing Defendant Faulk that she was enforcing an

---

[1] Plaintiff maintains that his aunt had ordered him the magazines, and that there was not an issue regarding the content as the magazines had been mailed directly from the publisher. (Doc. no. 1, p. 5).

2

illegal and unconstitutional local rule, Defendant Aldrich "interrupted and with a very hostile manner told me 'you're the criminal, not us - we're not breaking any rules . . . and we do what we want to!'"[2] (Id.). When Plaintiff requested the invoice to determine which magazines had arrived, his request was denied, and he was informed that "we're rejecting all of it." (Id.).

Some time after his encounter with the mailroom staff, but before September 9, 2007, Plaintiff received the magazine invoice he had requested.[3] (Id.). Plaintiff alleges that he was not permitted by Defendant Harmond to "mail out the invoice." (Id.). According to Plaintiff, he only had one stamp, and Defendant Harmond refused to allow Plaintiff to "mail out" only a portion of what had been rejected. (Id.). Defendant Harmond then purportedly informed Plaintiff that if he (Plaintiff) "could not come up with the stamps by 4pm, the items would be destroyed." (Id.).

Plaintiff asserts that he has exhausted his administrative remedies. (Id.). He claims that in denying his grievances Defendants Rosier, Blair, Kemp, and Donald were "deliberately and willfully indifferent to Plaintiff's rights and constitutional law." (Id. at 6). Plaintiff also notes that these Defendants all had within their power, the ability to stop the

---

[2]Although Plaintiff alleges that Defendant Faulk was enforcing an illegal and unconstitutional local rule, he does not identify the "illegal and unconstitutional local rule" of which he complains; the Court therefore infers from Plaintiff's complaint and attached grievances that he is referring to the fact that the magazines were paid for by his aunt and not from funds in his prisoner account. (Doc. no. 1, p. 5). In response to Plaintiff's grievances the warden/superintendent notes that "Per A/W Rosier magazines should come directly from the publisher and approved by institutional staff. The funds will be deducted from the inmates' account. . . ." (Id. at 22).

[3]According to this invoice, Plaintiff had received ten magazines. (Doc. no. 1, p. 6).

3

violation and the ability to revise the policy that inmates have to pay for magazine subscriptions from their inmate accounts. (Id.).

Thereafter, according to Plaintiff, around November 1, 2007 a representative for Defendant Donald, from Inmate Affairs, came to WCF under the pretense of investigating and trying to resolve his grievance. (Id.). Plaintiff claims that it was a pretense because in actuality this representative came for the purpose of "coercing the whole dorm." (Id. at 6-7). However, Plaintiff's complaint is unclear regarding the alleged coercion. Plaintiff simply states, "In actuality, the person tried to coerce the whole dorm all day if the guilty party isn't pointed out or continues to refuse to step forward." (Id.).

Plaintiff also asserts that Defendants have retaliated against him for complaining about the magazines. (Id. at 7-8). More specifically, Plaintiff claims that since he filed his initial grievance regarding the magazines, the mailroom staff and Defendant Rosier have rejected packages for Plaintiff that had previously been approved. (Id. at 7). In addition, Plaintiff maintains that Defendant Rosier justifies this rejection based on a rule that was enacted after Plaintiff had received approval to order the items in the packages. (Id.). According to Plaintiff, "not only did he [Defendant Rosier] wrongfully reject the items, but he has repeatedly refused to allow me to have the rest of the order, and intimidate[d] me into dropping the grievance." (Id. at 7-8). It is important to note that Plaintiff admits that he is currently pursuing this particular matter through the institutional grievance procedure. (Id. at 7).

Next, Plaintiff alleges that he was instructed to go to the property room, where Defendant Harmond accused Plaintiff of running a scam on Defendant Harmond and the mailroom staff. (Id. at 8). Defendant Harmond then, according to Plaintiff, threatened to have Plaintiff locked down or to have the housing unit he was housed in shaken down; he also allegedly threatened to notify others in Plaintiff's housing unit who was responsible for the shake down, if Plaintiff did not mail the magazines home. (Id.). When Plaintiff informed Defendant Harmond that he did not have sufficient stamps to mail the magazines home, Defendant Harmond threw the magazines into the trash. (Id.). Finally, Plaintiff concludes by noting that the staff at WCF are notorious for using group punishment and employing such methods to create strife and disagreement among the inmates. (Id.). Plaintiff seeks monetary and injunctive relief.

## II. DISCUSSION

### A. Procedures and Grievance Claims

To the extent Plaintiff alleges that his constitutional rights were violated because his grievances were mishandled, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures

5

or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff merely states that the denial of his grievances and appeals by Defendants Rosier, Blair, Kemp, and Donald shows their deliberate and wilful indifference to his rights and constitutional law. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731.

6

Therefore, Plaintiff's claims regarding an alleged violation of the grievance procedures fail as a matter of law.

**B.     Other Claims Against Defendants Donald, Kemp, Rosier, Blair, and CCA**

To the extent that Plaintiff blames Defendants Donald, Kemp, Rosier and Blair for the acts of their subordinates regarding the magazines and retaliation without alleging any personal involvement, his claims fail.[4] "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors[5] cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000)(citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193

---

[4]Although Plaintiff asserts a claim of retaliation against Defendant Rosier, the Court notes that this claim is unexhausted and will be addressed *infra*.

[5]Of course, private contractors that run prisons, like CCA, do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

7

F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that the above-named Defendants actually participated in disallowing the receipt of his magazines or retaliated against him for filing the grievances. Moreover, other than stating that Plaintiff filed grievances that were denied by the above-named Defendants, he has proffered no reason to support that these Defendants were deliberately indifferent to Plaintiff.

Similarly, Plaintiff fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[6] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that the above-named

---

[6]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

8

Defendants knew about any widespread abuse or that they were responsible for a custom or policy which resulted in ignoring Plaintiff's rights. Plaintiff states:

> The denial of my grievances and appeals by Mr. Rosier, Mr. Blair, Mr. Kemp, and Mr. Donald (who all had within their power to stop this violation and revise the policy) shows their deliberate and willful indifference to my rights and constitutional law. I pointed out to all of them the wrongness of their actions, as well as specific case law to support my claim, so all the defendants violated my rights knowingly.

(Doc. no. 1, p. 6). This statement is conclusory and insufficient to support a claim that Defendants deliberately ignored any of Plaintiff's constitutional rights. Simply using words such as "deliberate indifference" and "willful" does not elevate a claim to the point of actually alleging a deprivation of rights of constitutional proportions.[7] Crawford-El v. Britton, 523 U.S. 574, (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Donald, Kemp, Rosier, Blair, and CCA .

## C.     Claims Against the GDOC

Plaintiff's claims against the GDOC, a state agency, also fail. Liberally construing

---

[7]Alleging that he filed grievances and appeals with Defendants Donald, Kemp, Rosier, and Blair does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims. See Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions). Likewise, as noted *supra*, Plaintiff has no constitutional claim against Defendants Donald, Kemp, Rosier, and Blair based on any alleged mishandling of the grievance. See Wildberger, 869 F.2d at 1467-68 (affirming lower court decision that "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution").

Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against the GDOC. That is, Plaintiff fails to set forth any allegations that the GDOC - as an entity - is responsible for any possible constitutional violation and fails to explain how the GDOC is capable of being sued for any improper actions that are alleged to have occurred as the result of the actions of a specific individual.

In addition, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). In the absence of an allegation of any such connection between any actions of the GDOC with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant.

Moreover, to the extent Plaintiff seeks monetary damages from the GDOC, "the Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted, citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978) (*per curiam*). Simply put, "[t]here can be no doubt [] that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Georgia] has consented to the filing of such a suit."); Edelman v. Jordan, 415 U.S. 651, 663 (1974); see also Stevens, 864 F.2d at 115 (Georgia Department of Corrections is barred from suit by Eleventh Amendment). Thus,

Plaintiff has not asserted any viable claims against the GDOC.

**D.     Claims Against WCF**

Plaintiff has also sued WCF. Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for relief against WCF. Specifically, as noted in Part II B, *supra*, employers, like supervisory officials, cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger, 164 F. Supp. 2d at 1333-34 (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that an employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). That is, as with the GDOC, Plaintiff fails to set forth any allegations that WCF - as an entity - is responsible for any possible constitutional violation and fails to explain how WCF is capable of being sued for any improper actions that are alleged to have occurred as the result of the actions of a specific individual.

As previously noted, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538(internal quotation marks and citations omitted). In the absence of an allegation of any such connection between any actions of WCF with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant.

**E.     Retaliation Claims Against Mailroom Staff and Defendant Rosier**

Plaintiff's retaliation claims against the mailroom staff and Defendant Rosier also fail

11

as they are unexhausted.[8] Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 2385-86 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 2978 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an

---

[8]Giving Plaintiff the benefit of all doubt, the Court presumes that when he makes allegations against the mailroom staff he is referring to Defendants Faulk and Aldrich.

12

action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

First, it should be pointed out that the PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Here, Plaintiff admits that he has not completed the administrative grievance process prior to filing suit. Thus, in light of Plaintiff's admission that he is currently pursuing the matter through institutional grievance procedures at the time he filed his complaint, the instant retaliation claims should be dismissed without prejudice.[9]

---

[9]The Court recognizes that the Supreme Court recently held that under the Prison Litigation Reform Act, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 921 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 14; see also Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that

13

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Donald, Rosier, Kemp, Blair, GDC, CCA and WCF be **DISMISSED** from the case.[10]

SO REPORTED and RECOMMENDED this 18th day of June, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, the Court can properly recommend that Plaintiff's complaint be dismissed. See Anderson v. Donald, Civil Case No. 06-16322 (11th Cir. Jan. 8, 2008) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that Plaintiff failed to exhaust his administrative remedies).

[10] By separate Order, the Court has directed that service of process be effected on Defendants Faulk and Aldrich based on Plaintiff's First Amendment claims regarding their enforcement of the policy resulting in their refusal to deliver Plaintiff his magazines, and on Defendant Harmond based on Plaintiff's First Amendment retaliation claim.

14