ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JASON MAZUCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 308-018 |
| ) | |
| DWAYNE BLAIR, Warden of Care and ) | |
| Treatment; RALPH KEMP, Warden of ) | |
| Wheeler Correctional Facility; ROBERT ) | |
| ROSIER, Warden of Security; MR. ) | |
| HARMOND, Property Control Officer; ) | |
| CHARLOTTE ALDRICH, Mailroom ) | |
| Supervisor; SARAH FAULK, Mailroom ) | |
| Assistant; WHEELER CORRECTIONAL ) | |
| FACILITY; CORRECTIONS ) | |
| CORPORATION OF AMERICA; ) | |
| GEORGIA DEPARTMENT OF ) | |
| CORRECTIONS; FNU GILLIS, Chief; ) | |
| EACH AND EVERY INDIVIDUAL ) | |
| OFFICER EMPLOYED BY WHEELER ) | |
| CORRECTIONAL FACILITY; K. RICKS, ) | |
| Mailroom Assistant; and JAMES ) | |
| DONALD, Commissioner of the Georgia ) | |
| Department Of Corrections, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Wheeler Correctional Facility in Alamo, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must

be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on June 18, 2008, the Court reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. The Court directed that service of process be effected on Defendants Mr. Harmond, Charlotte Aldrich, and Sarah Faulk. (Doc. no. 10). The Court also recommended dismissal of Defendants James Donald, Robert Rosier, Ralph Kemp, Dwayne Blair, the Georgia Department of Corrections ("GDOC"), Corrections Corporation of America ("CCA"), and Wheeler Correctional Facility ("WCF"). (Doc. no. 8). The Court's recommendation was adopted by the District Judge. (Doc. no. 20). Thereafter, before any Defendants were served, Plaintiff filed a motion to amend his complaint. (Doc. no. 13). As Plaintiff is permitted to amend his complaint once as a matter of right, the Court directed Plaintiff to submit an amended complaint. Plaintiff submitted an amended complaint (doc. no. 21), and it is this document that the Court will now review.

## I. SCREENING THE COMPLAINT

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Dwayne Blair, Warden of Care and Treatment; (2) Ralph Kemp, Warden of WCF; (3) Robert Rosier, Warden of Security; (4) Mr. Harmond, Property Control Officer; (5) Charlotte Aldrich, Mailroom Supervisor; (6) Sarah Faulk, Mailroom Assistant; (7) WCF; (8) CCA; (9) GDOC; (10) FNU Gillis, Chief at WCF; (11) Each Individual Officer Employed at WCF; (12) K. Ricks, Mailroom Assistant; and (13) James Donald, Commissioner of the GDOC. (Doc. no. 21, pp. 1, 4). Plaintiff contends that

these Defendants violated his constitutional rights because they denied Plaintiff access to magazines that he ordered from a publishing company and retaliated against him when he filed grievances regarding the magazines. (See generally doc. no. 21). Defendants also allegedly did not allow Plaintiff to receive a game containing dice, purportedly in retaliation for his filing grievances against them. (Id.). According to Plaintiff, Defendants used the excuse of a new regulation banning dice to prohibit Plaintiff from receiving his game even though the game had been previously approved. (Id.). Plaintiff claims Defendants also violated his rights by purportedly sanctioning group punishment. (Id.). Lastly, Plaintiff claims that Defendants violated his rights by assigning female officers to posts where they were required to supervise the male inmates in a state of undress. (Id.). The Court will address each of Plaintiff's contentions in turn.

According to Plaintiff, on September 6, 2007, he received a notice from the mailroom staff, either Defendant Ricks or Defendant Faulk, that there were nine back issues of a magazine, sent directly from the publisher, waiting to be picked up; however, he was not allowed to receive the magazines because they could not find a release of funds form showing that Plaintiff had paid for the magazines from his inmate account. (Id. at 5). Plaintiff was then informed that the magazines were being rejected per an order of Defendant Rosier. (Id.). Plaintiff states that in the process of informing Defendant Faulk that she was enforcing an illegal and unconstitutional local rule, Defendant Aldrich "interrupted and with a very hostile manner told me 'you're the criminal, not us - we're not breaking any rules.'"[1] (Id.). When

---

[1] Plaintiff contends that the inmate handbook requires that inmates pay for publications from their trust account in order for approval to receive the item. (Doc. no. 21, p. 8). Plaintiff argues that there is no allowance made for items which may be ordered as

3

Plaintiff requested the invoice to determine which magazines had arrived, his request was denied, and he was informed that "we're rejecting all of it." (Id.). Plaintiff argues that the policy requiring inmates to pay for publications from their trust account, and not allowing family members or friends to pay for the publications, amounts to censorship. (Id. at 8).

On October 9, 2007, Plaintiff tried to mail the invoice which had arrived with the magazines.[2] (Id. at 6). However, Plaintiff alleges that he was not permitted by Defendant Harmond to "mail out the invoice." (Id.). According to Plaintiff, he only had one stamp, and Defendant Harmond refused to allow Plaintiff to "mail out" only a portion of what had been rejected. (Id.). Defendant Harmond then purportedly informed Plaintiff that if he (Plaintiff) "could not come up with the stamps by 4pm, the items would be destroyed." (Id.). Plaintiff maintains that around November 7, 2007, he was informed that Defendant Harmond had not yet destroyed the property, and Plaintiff was given one more chance to mail the package home. (Id.). Plaintiff alleges that when he reported to Defendant Harmond concerning mailing home the package, Defendant Harmond "threatened to have [Plaintiff] locked down or have the housing unit [he] was assigned to shaken down - 'and let the other inmates know who is responsible' - if Plaintiff did not mail the package home." (Id. at 6-7). Plaintiff did not have enough money to mail the package home, so Defendant Harmond threw the magazines into the trash. (Id. at 7).

Plaintiff asserts that he has exhausted his administrative remedies concerning not being permitted to receive his magazines and the practice of group punishment. (Id.). He

---

gifts by family members or friends. (Id.). According to Plaintiff, WCF is the only prison in Georgia that has this policy of prohibiting gift publications. (Id.).

[2]According to this invoice, Plaintiff had received ten magazines. (Doc. no. 21, p. 6).

4

claims that Defendants Blair, Kemp, and Donald were aware of his plight through the grievances he filed. (Id. at 6). Plaintiff also notes that these Defendants all had within their power the ability to stop the purported violations from occurring, but because they did not, and because they were aware of the situation, Defendants are "in fact accomplices to the violations." (Id.).

Concerning the group punishment, Plaintiff alleges that the practice is widespread and occurs in his housing unit at least once a week. (Id. at 7-8). Such punishment includes suspending television privileges for the whole dorm because one person was caught smoking. (Id.). Another punishment is to "shake down" the housing unit every hour until "the officer finds out who made a comment behind her back." (Id.). Plaintiff notes that "each individual officer at WCF who has participated in a retaliatory shake-down or inspection is party to this practice, as well as the COs who order such sanctions." (Id.).

Concerning Plaintiff's game, on December 4, 2007, Plaintiff was informed by Defendant Faulk that Defendant Rosier would not allow Plaintiff to receive a game he had ordered because in contained dice. (Id.). At the time Plaintiff had ordered the game, there was no restriction on dice; therefore, Plaintiff argues that Defendants Faulk, Aldrich, Ricks, and Rosier were retroactively applying the new regulation to him as retaliation for his filing grievances against them.[3] (Id.). In addition, Plaintiff notes that the rule prohibiting dice does

---

[3] It is important to note that Plaintiff admitted in his original complaint that at the time he commenced the above-captioned case, he was currently pursuing this particular matter (his retaliation claim concerning the rejection of his game) through the institutional grievance procedure. (Doc. no. 1, p. 7). Additionally, Plaintiff submitted his grievances as exhibits attached to his amended complaint. A review of the grievances reveals that indeed, Plaintiff had not exhausted his administrative remedies concerning his claims for retaliation and refusal to allow him to have a game with dice, at the time he commenced the above-

5

not serve a legitimate penological interest, and it does not apply "evenly to all, and so it violates his right to equal protection." (Id. at 9).

Finally, Plaintiff asserts that his Fourth, Eighth, and Fourteenth Amendment rights are being violated because female officers are routinely assigned to posts where they monitor male inmates in a state of undress. (Id.). Plaintiff does not specifically name who assigned the female officers to these posts, he merely concludes by noting, "The practice of placing women in sensitive postings is widespread throughout the GDOC and CCA, and occurs with the knowledge and approval of Defendant Donald." (Id.).

## II. DISCUSSION

### A. Retaliation Claims Against Defendants Faulk, Aldrich, Ricks, and Rosier

Plaintiff's claims for retaliation and refusal to allow him to have a game with dice, against Defendants Faulk, Aldrich, Ricks, and Rosier fail, as they are unexhausted. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548

---

captioned case. (See doc. no. 21, Exs. P-1, P-2, P-3).

U.S. 81, (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), cert. denied, 126 S.Ct. 2978 (2006). Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 Fed. Appx. 918, 920 (11th Cir. Jan. 17, 2006) (quoting Johnson, 418 F.3d at 1155).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

First, it should be pointed out that the PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available"

7

whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Here, Plaintiff admitted in his original complaint that he had not completed the administrative grievance process prior to filing suit. Additionally, he has included the grievances he filed which reveal this matter was still ongoing at the time he initiated the above-captioned lawsuit. (Doc. no. 21, Exs. P-1-P-3). Thus, in light of Plaintiff's admission and his submitted grievances that he was pursuing the matter through institutional grievance procedures at the time he commenced the above-captioned case, the instant claims for retaliation and refusal to allow him to have a game with dice should be dismissed without prejudice.[4]

### B. Assignment of Female Officers

Plaintiff's statements concerning the assignments of female officers are conclusory and insufficient to support a claim that his constitutional rights were violated. Crawford-El v. Britton, 523 U.S. 574, (1998) (noting that plaintiffs must "put forward specific,

---

[4]The Court recognizes that the Supreme Court recently held that under the Prison Litigation Reform Act, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 921 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 14; see also Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, the Court can properly recommend that Plaintiff's amended complaint be dismissed. See Anderson v. Donald, Civil Case No. 06-16322 (11th Cir. Jan. 8, 2008) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that Plaintiff failed to exhaust his administrative remedies).

8

nonconclusory factual allegations that establish improper motive causing cognizable injury"). Plaintiff has not identified any affirmative action taken by any individual; he alleges that female officers are routinely assigned to posts where they have to monitor inmates in a state of undress. (Doc. no. 21, p. 10). Plaintiff then states "The Wardens, Chiefs, Unit Managers, Captains, Lieutenants, and Sergeants are all aware of these problems, yet continue to assign female CO's to posts. . . ." (Id.). He concludes by stating, "The practice of placing women in sensitive postings is widespread throughout the GD[O]C and CCA, and occurs with the knowledge and approval of the commissioner, Mr. James Donald." (Id.).

"Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, – F.3d – , No. 07-10518, 2008 WL 2875804, *4 (11th Cir. July 28, 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."))).

Thus, in the absence of an allegation of any connection between any actions of any Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief. Here, Plaintiff has not named a particular Defendant, other than Defendants GDOC,

9

CCA, and Donald in their supervisory capacities, (claims that are addressed infra). Although Plaintiff states Wardens, Chiefs, Unit Managers, Captains, Lieutenants, and Sergeants are aware of the problem, he does not claim that these unidentified people assigned the female officers to these posts. Moreover, merely naming a title (i.e warden) is not particular enough, as certainly there is more than one warden, chief, unit manager, captain, lieutenant, and sergeant at WCF. Additionally, Plaintiff has not named all wardens, chiefs, unit managers, captains, lieutenants, and sergeants at WCF in this lawsuit. In sum, Plaintiff has failed to state a claim concerning the female guards assignments at WCF.

C.   **Group Punishment Claims Against Each Individual Officer Employed by WCF**

Plaintiff's group punishment claim consists of his statement that 1) group punishment occurs on a weekly basis, 2) his examples of group punishment - hourly shake downs, and the suspension of television privileges, and 3) his assertion that "each [I]ndividual [O]fficer at WCF" who has participated in a retaliatory shake-down or inspection is party to this practice. (Doc. no. 21, p. 7).

Plaintiff's statements concerning group punishment are conclusory and insufficient to support a claim that his constitutional rights were violated. As previously noted, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538 (internal quotation marks and citations omitted). A case is properly dismissed, where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, – F.3d –, No. 07-10518, 2008 WL 2875804, *4 (11th Cir. July

28, 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."))). Thus, in the absence of an allegation of any connection between any actions of any Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief.

Here, Plaintiff has not identified any affirmative action taken by any individual, in fact, other than giving examples of the different kinds of group punishment, Plaintiff does not allege any specific event of group punishment. In sum, Plaintiff has failed to state a claim concerning group punishment against "Each Individual Officer at WCF."

### D. Claims Against Defendants Donald, Kemp, Blair, and CCA

To the extent that Plaintiff blames Defendants Donald, Kemp, and Blair for the acts of their subordinates regarding the magazines, game, retaliation, and group punishment without alleging any personal involvement, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors[5]

---

[5] Of course, private contractors that run prisons, like CCA, do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000)(citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that the above-named Defendants actually participated in disallowing the receipt of his magazines, game, retaliated against him for filing the grievances, or took part in group punishment. Moreover, other than stating that the above-named Defendants were aware of his plight through grievances he filed, he has proffered no reason to support that these Defendants violated any of Plaintiff's constitutional rights. Additionally, concerning Plaintiff's claim of the female guard assignments, he has not alleged that Defendant Donald was personally involved in the assignments of these female officers; he merely, in conclusory fashion, states that these assignments occur with the knowledge and approval of Defendant Donald.

Similarly, Plaintiff fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be

established "when a history of widespread abuse[6] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has proffered no allegations to suggest that the above-named Defendants knew about any widespread abuse or that they were responsible for a custom or policy which resulted in ignoring Plaintiff's rights. Instead, Plaintiff simply asserts that Defendants were aware of the violations of his rights from the grievances he filed. (Doc. no. 21, p. 6). Plaintiff then states:

> Though it is well within all their power to correct the violations, they did not. By allowing said violations to continue with their knowledge of the events, Warden Kemp, Warden Blair, and James Donald are in fact accomplices to the violation.

(Id.). This statement is conclusory and insufficient to support a claim that Defendants ignored any of Plaintiff's constitutional rights.[7] In sum, Plaintiff has failed to state a claim

---

[6]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[7]Alleging that he filed grievances and appeals with Defendants Donald, Kemp, and Blair does not satisfy the burden of putting a supervisor on notice of a widespread problem or otherwise show that the supervisor was directly involved with Plaintiff's alleged claims.

upon which relief may be granted against Defendants Donald, Kemp, Blair, and CCA concerning the magazines, games, and group punishment claims. (Doc. no. 1, pp. 7-8).

Concerning the assignment of female officers, the only connection alleged by Plaintiff between the assignment of female officers and Defendant Donald is Plaintiff's conclusory statement that Defendant Donald had knowledge that such assignments were widespread throughout the GDOC and occur with his knowledge and approval. (Doc. no. 21, p. 10). However, Plaintiff does not explain how it is that Defendant Donald had any knowledge of any such purported widespread abuses related to the assignments. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir.1984) ("In civil rights ... actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."). As such, Plaintiff has failed to demonstrate that there was a causal connection between the actions of Defendant Donald and the assignments of the female officers.

### E. Claims Against Gillis

Although Plaintiff names Defendant Gillis in the caption of his amended complaint, nowhere in the statement of claims does he mention Defendant Gillis. As previously noted, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca,

---

See Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

14

995 F.2d at 1538 (internal quotation marks and citations omitted). In the absence of an allegation of any such connection between any actions of Gillis with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant.[8]

## F. Claims Against the GDOC

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the amended complaint also fails to state a claim for relief against the GDOC. That is, Plaintiff fails to set forth any allegations that the GDOC - as an entity - is responsible for any possible constitutional violation and fails to explain how the GDOC is capable of being sued for any improper actions that are alleged to have occurred as the result of the actions of a specific individual.

In addition, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538 (internal quotation marks and

---

[8]The Court is aware that Defendant Gillis is named in one of Plaintiff's grievances attached to his amended complaint. However, as explained in the Court's August 19, 2008 Order directing Plaintiff to submit an amended complaint:

> While Plaintiff may attach exhibits to his amended complaint, he shall not incorporate them by reference as a means of providing the factual basis for his complaint. Thus, Plaintiff must name the individuals whom he seeks to include as defendants herein in both the caption and the body of his amended complaint; he may not rely on the fact that individuals are named in the exhibits attached to his amended complaint as a means of including such persons as defendants to this lawsuit. The Court will not independently examine exhibits that Plaintiff does not specifically reference (by the exhibit's page number) in his amended complaint.

(Doc. no. 19, p. 12).

citations omitted). In the absence of an allegation of any such connection between any actions of the GDOC with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant.

Moreover, to the extent Plaintiff seeks monetary damages from the GDOC, "the Eleventh Amendment insulates a state from suit brought by individuals in federal court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted, citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Arms or agencies of the state are also immune from suit. Alabama v. Pugh, 438 U.S. 781, 782 (1978) (*per curiam*). Simply put, "[t]here can be no doubt [] that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Georgia] has consented to the filing of such a suit."); Edelman v. Jordan, 415 U.S. 651, 663 (1974); see also Stevens, 864 F.2d at 115 (Georgia Department of Corrections is barred from suit by Eleventh Amendment). Thus, Plaintiff has not asserted any viable claims against the GDOC.

### G. Claims Against WCF

Plaintiff has also sued WCF. Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the amended complaint fails to state a claim for relief against WCF. Specifically, as noted in Part II B, *supra*, employers, like supervisory officials, cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger, 164 F. Supp. 2d at 1333-34 (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that an employer which provided medical care for state inmates could not be sued under

§ 1983 on *respondeat superior* theory). That is, as with the GDOC, Plaintiff fails to set forth any allegations that WCF - as an entity - is responsible for any possible constitutional violation and fails to explain how WCF is capable of being sued for any improper actions that are alleged to have occurred as the result of the actions of a specific individual.

As previously noted, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538 (internal quotation marks and citations omitted). In the absence of an allegation of any such connection between any actions of WCF with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this Defendant.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims for retaliation and rejection of his game containing dice, group punishment, and female officer assignments, as well as Defendants Donald, Kemp, Blair, GDOC, CCA, Each and Every Individual Officer Employed by Wheeler Correctional Facility, and WCF

be **DISMISSED** from the case.[9]

SO REPORTED and RECOMMENDED this 2nd day of October, 2008, at Augusta, Georgia.

```
                         /s/ W. Leon Barfield
                         W. LEON BARFIELD
                         UNITED STATES MAGISTRATE JUDGE
```

---

[9]By separate Order, the Court has directed that service of process be effected on Defendants Rosier, Ricks, Faulk and Aldrich based on Plaintiff's First Amendment claims regarding their enforcement of the policy resulting in their refusal to deliver Plaintiff his magazines, and on Defendant Harmond based on Plaintiff's First Amendment retaliation claim.

18