ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA   2010 JAN 13   AM 8: 12

DUBLIN DIVISION

| | | |
|---|---|---|
| JASON MAZUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-018 |
| | ) | |
| ROBERT ROSIER, Warden of Security, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff brought the captioned case pursuant to 42 U.S.C. § 1983. The matter is now

before the Court on the parties' cross motions for summary judgment. (Doc. nos. 35, 39).

Both parties have responded to the opposing party's motions. (Doc. nos. 39, 42). For the

following reasons, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for

summary judgment be **DENIED**, that Defendants' motion for summary judgment be

**GRANTED**, that a final judgment be **ENTERED** in favor of Defendants, and that this civil

action be **CLOSED**.

I.      **STATEMENT OF FACTS**

Plaintiff is currently an inmate at Washington State Prison in Davisboro, Georgia, but

at all times relevant to this litigation, he was incarcerated at Wheeler Correctional Facility

("WCF") in Alamo, Georgia. After screening Plaintiff's amended complaint (doc. no. 21)

pursuant to 28 U.S.C. §§ 1915(e) & 1915A, the Court allowed Plaintiff's First Amendment

claims to proceed. (Doc. no. 22). Specifically, the Court allowed Plaintiff to proceed with his First Amendment claim against Defendants Rosier, Aldrich, Faulk, and Ricks, based on their enforcement of a policy that resulted in Plaintiff not receiving certain magazines. (Id. at 6). The Court also allowed Plaintiff to proceed with his First Amendment claim for retaliation against Defendant Harmon.[1] (Id.). All other Defendants and claims were dismissed. (Doc. no. 29). At the time of the events forming the basis for this case, Defendant Aldrich was the mailroom supervisor and worked in the mailroom sorting through the mail, posting money orders, and checking packages for contraband. (Doc. no. 39, Ex. A, Pl.'s Dep., p. 10). Defendants Faulk and Ricks were mailroom assistants, Defendant Harmon was the property control officer, and Defendant Rosier was the Assistant Warden. (Doc. no. 39, Ex. B, Rosier Aff. ¶ 2).

The record reflects that since his arrival at WCF in January 2007, Plaintiff had been allowed to receive monthly issues of a role-playing magazine (hereinafter "the Magazine(s)"). (Doc. no. 35, Ex. Z, ¶ 10). At some point, the Magazine's publishing company made the decision to get out of the print magazine business and to go completely electronic. (Doc. no. 39, p. 3). As such, the publishing company offered various options to their subscription holders. One such option - the option chosen by Plaintiff - was to receive a selection of back issues for the amount remaining in the subscription. (Id.). Plaintiff was entitled to ten back issues. (Doc. no. 39, Ex. A, Pl.'s Dep., p. 14). The Magazines arrived at the prison mail room in bulk, i.e., the ten Magazines arrived at once instead of arriving one

---

[1]Pursuant to Defendants' amended answer, the full and proper spelling of Defendant Harmond's name is Joe Harmon. (Doc. no. 25, p. 1). As such, the **CLERK** is **DIRECTED** to change the docket accordingly.

per month.[2]  (Id. at 3-4).

On September 6, 2007, Plaintiff received a notice from the mailroom staff[3] at WCF

that there were nine back issues of the Magazine, sent directly from the publisher, waiting

to be picked up; however according to the notice, he was not allowed to receive the

Magazines because they could not find a release of funds form showing that Plaintiff had

paid for the Magazines from his inmate account.  (Doc. no. 39, Ex. A, Pl.'s Dep., p. 7).

Plaintiff's subscription to the Magazine had been paid by his aunt.[4]  (Id. at 8).

Upon receiving the notice, Plaintiff went to the mailroom to ask about the Magazines

and why he could not receive them.  (Doc. no. 21, p. 5).  Plaintiff alleged that he was again

told that he could not receive the package because his file did not contain a release of funds

form showing that Plaintiff had paid for the Magazines from his inmate account.  (Id.).

According to Plaintiff, he stated to Defendant Faulk that she was enforcing an illegal and

unconstitutional local rule.  (Id.).  Additionally, Plaintiff argued that at that point, Defendant

Aldrich became "extremely hostile" and stated to Plaintiff that they were not the law

breakers, rather it was Plaintiff who was the criminal.  (Pl.'s Dep., pp. 12-13).  Additionally,

---

[2]Although there was some confusion about the number of Magazines in the package (the notice from the mailroom indicated there were only 9 Magazines) according to the Magazine package invoice, Plaintiff had received ten magazines.  (Doc. no. 21, p. 6).

[3]Plaintiff maintains that the notice was sent by either Defendant Faulk or Defendant Ricks.  (Doc. no. 21, p. 5).

[4]Plaintiff contends that the inmate handbook requires that inmates pay for publications from their trust account in order for approval to receive the item.  (Doc. no. 21, p. 8).  Plaintiff argues that there is no allowance made for items which may be ordered as gifts by family members or friends.  (Id.).  According to Plaintiff, WCF is the only prison in Georgia that has this policy of prohibiting gift publications.  (Id.).

Defendant Aldrich told Plaintiff that they were going to call Defendant Rosier and have Plaintiff put in segregation. (Id.). Next, Plaintiff maintained that he requested the invoice to determine which magazines had arrived. (Doc. no. 21, p. 6). Plaintiff provided that this request was denied, and he was informed that the entire package of ten Magazines was being rejected. (Id.). Plaintiff maintained that Defendant Aldrich signed the denial form, but that she did so on the order of Defendant Rosier. (Pl.'s Dep., p. 10). Plaintiff argued that the policy requiring inmates to pay for publications from their inmate account, and not allowing family members or friends to pay for the publications, amounts to censorship. (Id. at 8).

On October 9, 2007, Plaintiff tried to mail the Magazines home. (Id. at 8-10). However, Plaintiff, noted that he did not have sufficient postage to "mail out" the entire package, and Defendant Harmon refused to allow Plaintiff to "mail out" only a portion of what had been rejected. (Id.). Defendant Harmon then purportedly informed Plaintiff that if he (Plaintiff) could not come up with the stamps by 4 pm, the items would be destroyed. (Id.). Plaintiff maintained that he again expressed to Defendant Harmon that he wanted to "mail out" the package and asked that it not be destroyed until he was able to do so. (Id.). However, Plaintiff claimed that Defendant Harmon became angry, threw the Magazines in the trash, and told Plaintiff to get out of the office before he had Plaintiff "locked down." (Id.).

Plaintiff submitted an informal grievance wherein he complained that he was notified that he would not be allowed to receive the Magazines because there was no record of payment form his account. (Doc. no. 1, Attach. Informal Grievance dated Sept. 7, 2007). In the informal grievance, Plaintiff also stated that this practice of not allowing an inmate to

receive a subscription because it had not been paid from the inmate's account violated his

First Amendment rights. In support of this proposition, Plaintiff cited to <u>Crofton v. Roe</u>, 170

F.3d 957 (9th Cir. 1999) and <u>Sorrels v. McKee</u>, 290 F.3d 965 (9th Cir. 2002). (<u>Id.</u>). After

Plaintiff's informal grievance was denied, he submitted a formal grievance raising the same

complaint as he raised in his informal grievance. (<u>Id.</u>, Attach. Formal Grievance 571-07-

0325). The investigation of Plaintiff's formal grievance revealed:

> [Plaintiff] did[] [not] follow proper procedure to receive the magazines. Per [Assistant Warden] Rosier[,] magazines should come directly from the publisher and [be] approved by [the] institutional staff. The funds will be deducted from the inmate's account. Inmates are only allowed 8 books, magazines and newspapers (any combination). <u>[Plaintiff] exceeded the limit and will not be allowed the magazines.</u>

(<u>Id.</u>) (emphasis added). Thus, the response to the formal grievance indicates that Plaintiff's

Magazines were rejected because Plaintiff exceeded the limit allowed. Plaintiff appealed the

denial of his formal grievance. The appeal response provides:

> a package containing 9 magazines and 1 pack of playing cards was confiscated because [Plaintiff] did not follow proper procedure in obtaining these items, as there is no package request on file. You have been advised to properly dispose of the items or they will be destroyed in accordance with policy.

(Doc. no. 21, Ex. N-4). Thus, the appeal response indicates that Plaintiff's Magazines were

rejected not because Plaintiff exceeded the limit, but because there was no package request

on file.

## II.      DISCUSSION

### A.      Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material

5

fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Applicable substantive law identifies which facts are material in a given case.[5] Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials

on file, that there are no genuine issues of material fact to be decided at a trial. Clark v.

Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests

with the movant, to prevail at the summary judgment stage, the movant must show that, "on

all the essential elements of its case . . . , no reasonable jury could find for the nonmoving

party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)

(en banc). On the other hand, if the non-moving party has the burden of proof at trial, the

movant may prevail at the summary judgment stage either by negating an essential element

of the non-moving party's claim or by pointing to specific portions of the record that

demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929

F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex

Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot

meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the

movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S.

at 157.

---

[5]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Plaintiff's Claim That Prison Policy Amounted To Censorship

The core of Plaintiff's claim is that Defendants violated his First Amendment rights because they enforced a policy that resulted in Plaintiff not receiving certain magazines. Plaintiff alleges in his amended complaint that he was refused the Magazines because he had not paid for the subscription from his inmate account. However, Plaintiff asserts that the Magazines had been previously approved, came directly from the publisher, and that the content of the Magazine was not at issue. Therefore, he maintains that he should have been allowed to receive them and that the reason for the denial of the publications was not legitimate.[6] (Doc. no. 42, pp. 1-3).

---

[6]Plaintiff argues that if, in fact, his package was rejected because there were too many Magazines, he should have been given the option to keep up to the limit allowed by the prison policy (eight), and told to dispose of the rest. (Doc. no. 42, p. 1). Additionally, Plaintiff maintains, concerning Defendants' argument that he did not follow the proper procedure because he failed to receive prior approval for the package, that at the time his

On the other hand, Defendants allege they are entitled to summary judgment because Plaintiff failed to state a constitutional violation under the First Amendment. (See generally doc. no. 39). Specifically, Defendants assert that Plaintiff was not allowed to receive the Magazines because he failed to get prior of approval for the package as per Corrections Corporation of America ("CCA") policy.[7] (Doc. no. 39, no. 9). Thus, the Court must determine whether Defendants, because they enforced WCF policies, violated Plaintiff's First Amendment rights by refusing to allow Plaintiff to receive the Magazines.

### 1. Why The Magazines Were Rejected

Plaintiff asserts in his amended complaint, motion for summary judgment, and response to Defendants' motion for summary judgment, that the reason given for the denial of the package was that the funds to pay for the subscription came from his aunt rather than from his inmate account. Plaintiff states that per WCF policy, the subscription would be denied if funds to pay for the subscription did not come from his inmate account. This policy, according to Plaintiff, is unconstitutional. Defendants, however, maintain in their motion for summary judgment that Plaintiff was denied the Magazines because he was required to get prior approval of the package request form. (Doc. no. 39, p. 10).

Plaintiff's argument that he was denied the Magazines because the funds used to pay for the subscription did not come from his inmate account is belied by several facts. First, Plaintiff had been allowed, and in fact, had been receiving issues of the Magazine even though his aunt had paid for the subscription and he had not used his inmate account funds.

_____

package was rejected, there was no procedure for getting approval for magazines. (Id.).

[7]WCF is privately operated by CCA. (Rosier Aff. ¶ 2).

Second, the responses to the formal grievance and appeal do not provide that Plaintiff was denied his Magazines because the funds to pay for the subscription had not come from his inmate account. Rather the reasons given for the denial were: (1) that inmates are only allowed 8 books, magazines and newspapers (any combination), but Plaintiff exceeded the limit and therefore would not be allowed the Magazines; and (2) that Plaintiff did not follow proper procedure in obtaining the Magazines, as there was no package request on file. As such, the policy at issue is not whether it is constitutional to require a Plaintiff to use his inmate account funds to pay for a subscription and not be allowed to have a gift subscription; but, rather, whether the policy that limits inmates to 8 magazines and/or the policy that inmates must get prior approval for the packages, are constitutional.

## 2. The Rational Basis Test

"It is well established that prisoners retain First Amendment rights. As the Supreme Court has emphasized, '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution.'" Owen v. Willie, 117 F.3d 1235, 1237 (11th Cir. 1997) (quoting Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). However, a regulation affecting the First Amendment rights of prisoners to receive and possess "publications" are valid if the regulation is "reasonably related to legitimate penological interests." Owen, 117 F.3d at 1237 (quoting Thornburgh, 490 U.S. at 413). Thus, prison regulations impacting the First Amendment rights of prisoners are subjected to a type of rational basis test.

The analysis of the constitutionality of the regulation must be informed by the

9

following factors: 1) whether the regulation is intended to further a "legitimate and neutral[8]" government objective; 2) whether the regulation is in fact rationally related to that objective; 3) whether the regulation requires prison officials to make "individualized" determinations with regard to prohibiting each "issue" or whether it simply makes "blanket" prohibitions of certain publications;[9] 4) whether, under the regulation, inmates retain "an alternative means of exercising the right;" 5) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison;" and 6) whether the regulation is an "exaggerated response" to prison concerns, or, in other words, whether there exists an "obvious, easy alternative . . . that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." Thornburgh, 490 U.S. at 414-19; Owen, 117 F.3d at 1237.

### 3.      Constitutionality of the WCF Policies

The policies implemented at WCF do not violate the First Amendment. First, they are rationally related to a legitimate and neutral government objective. Here, there is not an issue with regard to the content of the Magazines or Plaintiff's subscription, as Plaintiff was allowed to, and did, receive the Magazines from the subscription at issue while he was incarcerated at WCF. The problem occurred when ten magazines were shipped to Plaintiff

---

[8]In this context, the regulation must be content-neutral in the sense that the "government interest [is] unrelated to the suppression of expression." Thornburgh, 490 U.S. at 415 (citation omitted). Thus, even if a regulation singles out a particular type of expression, the regulation is nevertheless regarded as "neutral" if its goal is not the suppression of protected speech. Id. at 415-16.

[9]See Thornburgh, 490 U.S. at 416 ("We are comforted by the individualized nature of the determinations required by the regulation.").

in one package. Thus, the issue is not the content of the Magazines, but the procedure by

which Plaintiff received the Magazines. WCF has a policy that allows inmates to have "any

combinations of magazines, newspapers, or books as long as they do not exceed 8 items."

(Doc. no. 21, Ex. A, p. 19). Additionally, it has a policy that requires inmates to receive prior

approval of any package. This policy provides:

> The items found in Attachment 1 in this handbook on the Package Receipt List[10] may be approved for receipt in packages. Inmates must obtain a Request/Authorization to Receive Packages from his respective case manager or other staff member. This form will be completed for all packages requested, including Christmas packages. The request must be returned inside the package.

(Id.). According to Defendants, the policy requiring prior approval by means of the package

request form decreases the likelihood of contraband entering the prison because the prison

staff has the ability to confirm ahead of time the shipment that was ordered by the prisoner

from an original publisher and that both the prisoner and staff know the package is coming.

(Doc. no. 39, p. 10). Additionally, Defendants maintain that by having prior knowledge of

the package, "reduced labor could be devoted to searching package and prison resources

would not unnecessarily devoted to the mailroom function." (Id. at 11 and Ex. B, Rosier Aff.

¶ 6). Defendant Rosier further explains that the reasoning behind the policy of limiting

shipments into the prison is to both improve security and also to reduce the labor hours

---

[10]Plaintiff attached to his amended complaint, as Exhibit I, the Inmate Package Request form (hereinafter "the Request Form"). (Doc. no. 21, Ex. I). The Request Form consists of a list of items such as recognized book of spiritual belief, games, picture album, etc. (Id.). Notably absent form the Request Form is magazines. Additionally, as noted by Plaintiff, the form specifically states that the items listed on the Request Form have been pre-approved, "do not add to this list or write in any items; any deviation will result in the package being returned to Sender." (Id.). As explained *infra*, this fact is not dispositive of Plaintiff's claims.

devoted by mailroom staff or incoming shipments including both publications and packages. (Id.). Furthermore, Defendant Rosier states that the Georgia Department of Corrections has the policy that limits the amount of personal property in prisoner's cells for security and fire safety reasons. (Id. ¶ 7). Therefore, these two policies are rationally related to those goals. Indeed, Defendant Rosier maintains that by having these policies in place, the introduction of contraband into the prisons is less likely. (Id. ¶ 6). As such, there can be no doubt that these goals reflect content-neutral and legitimate penological interests.

Furthermore, the policies at issue do not foreclose alternative avenues through which Plaintiff can exercise his First Amendment rights. Indeed, Plaintiff was permitted to receive the Magazine prior to this incident; the only reasons he was denied the Magazines on September 11, 2007, was because they were mailed to Plaintiff in bulk, putting Plaintiff over the allowable limit, and Plaintiff had not received prior approval of the package.

Moreover, although content is not an issue here, the WCF policies challenged require prison officials to make individualized determinations before confiscating or withholding any material. The Supreme Court has explained that in this context "broad discretion is appropriate." Thornburgh, 490 U.S. at 416. A standard which strips officials of such discretion would run the risk of sweeping too broadly or else excluding some publications needlessly. See id. at 417. However, as previously noted, the contents was not an issue, and importantly Plaintiff had been permitted to, and did, receive the Magazines.

Finally, Plaintiff has not shown that the WCF policies are an "exaggerated response" or that "obvious, easy alternatives" exist which would not pose more than a *de minimis* cost to penological interests. Thornburgh, 490 U.S. at 418. The policies are not a blanket ban on

12

all publications; they simply limit the number of publications an inmate may have at one time and require Plaintiff to seek prior approval of the package content before receiving the package. Put plainly, the policies are rationally related to important penological interests (prison security), and they do not run afoul of the First Amendment.

In sum, Plaintiff has failed to meet his burden to create a genuine dispute of material fact regarding his First Amendment claim concerning the Magazines. The policies at issue are constitutional, and Defendants Rosier, Aldrich, Faulk and Ricks, are entitled to summary judgment.

### C.    Plaintiff's Claim Of Retaliation By Defendant Harmon

Plaintiff also alleges that Defendant Harmon retaliated against him by threatening Plaintiff with "lock down" when Plaintiff requested that Defendant Harmon not destroy the package of Magazines. The First Amendment prohibits prison officials from retaliating against inmates for filing lawsuits or administrative grievances, or for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Nor may prison officials burden an inmate's First Amendment rights "with practices that are not reasonably related to legitimate penological objectives" or "act with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (*per curiam*) (discussing alleged violation of First Amendment right of access to the courts) (citations omitted). Where a plaintiff has failed to establish a causal connection between his protected conduct and the alleged retaliatory action, summary judgment for the defendant is proper. Farrow, 320 F.3d at 1248-49. Stated another way, "A prisoner can establish retaliation by demonstrating that the prison official's

13

actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Id. at 1248 (citing Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989)). The Eleventh Circuit has ruled that "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment." Harris, 65 F.3d at 917.[11]

Plaintiff contends that when he requested that Defendant Harmon not destroy the package of Magazines, Defendant Harmon threatened Plaintiff with "lock down." On the other hand, Defendant Harmon argues that when Plaintiff received his bulk mailing of the Magazines, he explained to Plaintiff that there was no prior approved package request for the shipment as required by WCF policy. (Doc. no. 39, Ex. C, Harmon Aff. ¶ 3). Therefore, Defendant Harmon explained that he would have to dispose of the Magazines if they were not properly received, or if Plaintiff did not make some disposition of them under the policy. (Id.). According to Defendant Harmon, at that point, Plaintiff became loud and argued with him; as such Defendant Harmon ordered him out of the area. (Id.).

Defendant Harmon maintains that he did not have any discussion with Plaintiff concerning free speech rights or any complaints Plaintiff had about the prison conditions. (Id. ¶ 4). Defendant Harmon further maintains that Plaintiff simply stated to him that he had a right to his Magazines. However, Defendant Harmon told Plaintiff he could not give him the Magazines because the package did not comply with WCF policy. (Id.). Defendant Harmon

---

[11]In Harris, the Eleventh Circuit reversed the district court's decision granting summary judgment where the prisoner plaintiff submitted corroborating affidavits from fellow prisoners that stated a prison official commented that he filed disciplinary reports against the plaintiff, at least in part, in retaliation for prior litigation. Harris, 65 F.3d at 917.

avers that his statement to Plaintiff that he could not give Plaintiff the Magazines had nothing

to do with the content of the Magazines and was not to punish him. (Id.). Furthermore,

Defendant Harmon states that he did not threaten Plaintiff with "lock down" or searches, or

any other type of punishment, but it was Plaintiff's handling of the situation that was angry,

loud, and disrespectful. (Id.).

Here, Plaintiff's allegation against Defendant Harmon that he threatened Plaintiff with

"lock down" when Plaintiff requested that Defendant Harmon not destroy the package of

Magazines, does not rise to a First Amendment violation. Defendant Harmon's conduct did

not adversely affect Plaintiff's protected speech. Indeed, Plaintiff acknowledges, that up until

the delivery of the bulk package of Magazines, he had been permitted, and in fact had

received, the Magazines. Thus the issues with the Magazines was that Plaintiff received ten

Magazines at one time and had not obtained prior approval for a package. In other words, the

content of the Magazines was not at issue; rather, it was the procedure by which Plaintiff

received the Magazines. As previously noted, the Court concluded that the prison policy

requiring prior approval of packages did not violate Plaintiff's First Amendment rights.

Defendant Harmon maintains that he was following the prison procedure in not allowing the

Plaintiff to receive his Magazines because, contrary to prison policy, Plaintiff had not gotten

prior approval of the package.

To the extent Plaintiff argues that he was not required to get prior approval of the

package because Magazines are exempt from the Request Form, his argument fails. At most,

Plaintiff has alleged that Defendant Harmon improperly applied the prison policy. A violation

concerning state law/policies does not amount to a constitutional violation for which Plaintiff

can obtain relief under § 1983, as § 1983 is not concerned with a violation of state law/policies. Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir.2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under § 1983."). Therefore, Plaintiff's claim of retaliation fails and Defendant Harmon is entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's motion for summary judgment (doc. no. 35) be **DENIED**, that Defendants' motion for summary judgment (doc. no. 39) be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 3 day of January, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE